# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

ZACHARY CHIN,

   Plaintiff,

  v.

MAX ONE RETAIL LLC d/b/a
FRIENDLY'S, *et al.*,

   Defendants.

No. 1:20-cv-02928

**OPINION**

**APPEARANCES**:

Jacquelyn Matchett
Deborah L. Mains
COSTELLO & MAINS LLC
18000 Horizon Way
Suite 800
Mount Laurel, NJ 08054

 *On behalf of Plaintiff.*

Dino S. Mantzas
DINO S. MANTZAS, ATTORNEY AT LAW
701 Route 73 N.
Suite 1
Marlton, NJ 08053

 *On behalf of Defendants.*

**O'HEARN, District Judge.**

 This matter comes before the Court on Plaintiff Zachary Chin's ("Plaintiff") Motion for Summary Judgment, (ECF No. 37). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Plaintiff's Motion is **GRANTED**.

## I.  BACKGROUND

Plaintiff worked for Defendant, Max One Retail LLC, doing business as Friendly's ("Friendly's"), on and off from March 2015 until August 2019. (Pla.'s Stat. of Mat. Facts ("SOMF"), ECF No. 37-1, ¶ 2). Plaintiff began working at Friendly's Restaurant as a fountain worker, and then later, in May 2019, as a server. (Pla.'s SOMF, ECF No. 37-1, ¶¶ 3–4). Plaintiff was paid $2.63 plus tips per hour as a server. (Am. Compl., ECF No. 16, ¶ 9). In July 2019, Friendly's implemented a "tip pool" policy, in which greeters, fountain workers, expo workers—also known as bussers—and servers all shared in the tip pool. (Pla.'s SOMF, ECF No. 37-1, ¶¶ 5–18, Def.'s SOMF, ECF No. 38, ¶ 5). Under the tip pool policy, servers would have to "tip out" 3% of their total sales for the tip pool. (Pla.'s SOMF, ECF No. 37-1, ¶ 10).

Plaintiff alleges Defendants, Friendly's, J3Y3 Inc., and James Yanucil (collectively, "Defendants"), violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203(m), by including greeters, fountain workers, and bussers, in the "tip pool." (Am. Compl., ECF. No. 16, ¶¶ 21–23).

## II.  PROCEDURAL HISTORY

On March 17, 2020, Plaintiff commenced this action. (Compl., ECF No. 1). On January 29, 2021, Plaintiff filed an Amended Complaint. (ECF No. 16). On July 29, 2022, Plaintiff filed the present Motion. (ECF No. 37). Defendants filed a Response, (ECF Nos. 38–41), to which Plaintiff replied, (ECF No. 42).

## III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court shall grant summary judgment when "a movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact in dispute is material when it "might

affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once met, the burden shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(a)). To withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249–50). Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322.

## IV. DISCUSSION

Plaintiff moves for summary judgment as to liability on the sole count of the Amended Complaint: the alleged violation of the FLSA §203(m). (Motion, ECF No. 37). Plaintiff argues Defendants violated the FLSA by allowing employees who were not customarily and regularly tipped employees—specifically, the greeters, fountain workers, and bussers—to share in the tip pool. (ECF No. 37-2 at 1). Defendants, however, maintain that these employees were permitted under the FLSA to share in the tip pool. (Def.'s Br. in Opp., ECF No. 40 at 3). After reviewing the record, the Court concludes that Plaintiff is entitled to summary judgment.

### A. Plaintiff is Entitled to Summary Judgment on the FLSA Claim.

The FLSA requires employers to pay a minimum wage. *See* 29 U.S.C. § 206(a). However, the FLSA contains a provision, commonly referred to as the "tip credit," that allows employers to pay less than the general minimum wage—$2.13 per hour—to a "tipped employee" if the employee's tips make up the difference between the $2.13 minimum wage and the general minimum wage. 29 U.S.C. § 203(m). Subsection 203(t) defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

However, an employer may not claim a tip credit unless "all tips received by [a tipped] employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m). The statute, thus, provides for a limited exception by permitting "the pooling of tips among employees who customarily and regularly receive tips." But if an employee is required to share tips with an employee who does not customarily and regularly receive tips, the employer may not legally take a tip credit.

While the question of whether a particular employee meets the definition of a "tipped

4

employee" such that the pooling of tips and thus taking of the tip credit is proper is often a question of fact, here, Defendants do not dispute any of the material facts set forth by the Plaintiff. Thus, in this case it is a question of law for the Court.

Specifically, there is no dispute that Plaintiff, as a server, was properly deemed a "tipped employee." (Pla.'s SOMF, ECF No. 37-1, ¶ 18). There is also no dispute that Plaintiff did not retain all his tips. (Pla.'s SOMF, ECF No. 37-1, ¶¶ 8–10). It is further undisputed that servers, greeters, fountain workers, and bussers, were all included in the tip pool. (Pla.'s SOMF, ECF No. 37-1, ¶ 13). It is undisputed that greeters, bussers, and fountain workers did not receive tips prior to the implementation of the tip pool policy. (Pla.'s SOMF, ECF No. 37-1, ¶¶ 14–18).[1] Finally, and critically, it is also undisputed that servers were the only employees at Friendly's who customarily and regularly received tips. (Pla.'s SOMF, ECF No. 37-1, ¶ 18). As none of the material facts are disputed, the only question is whether Defendants required Plaintiff to pay into a valid tip pool comprised of only those employees who "customarily and regularly" received tips as a matter of law.

Here, Defendants argue first that there is no evidence in the record that Plaintiff received less than minimum wage "even after the three percent [was] taken for tip pooling." (Def.'s Br.,

---

[1] Defendants' Response to Plaintiff's Statement of Material Facts does not respond to ¶¶ 16–18 of Plaintiff's Statement. (Def. SMF, ECF No. 39). It also appears that Defendants submitted duplicative copies of its Supplemental Statement of Material Facts on ECF Nos. 38–39 but did provide the Court with a copy of its Response to Plaintiff's Statement of Material Facts in its courtesy copy to the Court. Nevertheless, pursuant to Local Civil Rule 56.1(a), any party opposing summary judgment must respond to a moving party's statement of material facts not in dispute, "addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion[.]" L. Civ. R. 56.1(a). "[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." *Id.* Because Defendants failed to respond to Paragraphs 16, 17, and 18 of Plaintiff's Statement of Material Facts, these facts are deemed admitted.

ECF No. 40 at 2). Defendants' arguments are misplaced because to be eligible to take a tip credit and pay an hourly wage less than minimum wage—which Friendly's did here—an employer must first satisfy the requirements of §203(m). Thus, the fact that Plaintiff never received less than minimum wage does not alleviate Defendants of the obligation to comply with §203(m).

Next, while Defendants do not dispute any of Plaintiff's material facts, including most importantly that these employees *did not* receive tips prior to the adoption of the tip pool policy, (Pla.'s SOMF., ECF No. 37-1, ¶¶ 14–18), they nevertheless maintain that the tip pool policy was lawful, (Def.'s Br., ECF No. 40 at 3–4). To support their inclusion of the bussers in the tip pool policy, Defendants cite Subsection 304(d)(4) of the Department of Labor Field Operations Handbook's recognition that "busboys/girls (server helper)" are eligible employees for tip pool policies. (Def.'s Br., ECF No. 40 at 2–3). As to the fountain workers and greeters, Defendants argue that they were permitted to be included in the tip pool policy because they "facilitated the server's ability to serve tables quickly and more efficiently." (Def.'s Br., ECF No. 40 at 2–3). The narrow legal question in this case, thus, turns on whether greeters, fountain workers, and bussers, are properly deemed tipped employees.

Defendants' admission that the greeters, fountain workers, and bussers had never previously received tips directly from customers is not necessarily dispositive of the issue. Although the Third Circuit has not yet addressed the issue, courts have recognized that an employee may qualify as a "tipped employee" under the FLSA even though they do not receive tips directly from a customer. *See Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 301 (6th Cir. 1998) (affirming summary judgment after finding hostesses, bussers, and bartenders were tipped employees allowed to be included in the tip pool despite not receiving tips directly from customers because this approach is consistent with the statutory language and the employees

6

sufficiently interacted with customers); *Davis v. B&S, Inc.*, 38 F. Supp. 2d 707, 717 (N.D. Ind. 1998) (explaining "the mere fact that the bartenders may have received money from the tip pool but were not required to contribute to the pool does not render the pool invalid as a matter of law"). Though a tipped employee need not receive tips from customers directly, qualifying as a tipped employee requires more than inclusion in a mandatory tip pool. *See Fiumano v. Metro Diner Mgmt. LLC*, No. 17-465, 2013 WL 1805135, at *4–5 (E.D. Pa. Feb. 7, 2023) ("Qualifying as a tipped employee requires something more than inclusion in a mandatory tip pool.").

Thus, when the employees do not receive tips directly from customers, they still may qualify as a "tipped employee" if they have direct customer interaction. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir. 2011) ("Under the FLSA an employer may not avail itself of the tip credit if it requires tipped employees to share their tips with employees who do not 'customarily and regularly receive tips.' Thus, an employer loses its entitlement to the tip credit where it requires tipped employees to share tips with (1) employees who do not provide direct customer service or (2) managers.") (citation omitted); *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x. 222, 231 (5th Cir. 2011) ("We conclude that the district court reasonably found direct customer interaction 'highly relevant' to tip-eligibility.") (citation omitted); *Ford v. Lehigh Valley Rest. Grp., Inc.*, No. 14-227, 2014 WL 3385128, at *2–4 (M.D. Pa. July 9, 2014) ("Based on this case law, section 203(m)'s plain meaning and the directive that exemptions to the FLSA are narrowly construed, we conclude that to properly take part in a tip pool a restaurant employee must have direct customer interaction" and this requirement "will be a fact intensive inquiry focusing on an employee's level of direct customer interaction"); *Black v. P.F. Chang's China Bistro, Inc.*, No. 16-3958, 2017 WL 2080408, at *9 (N.D. Ill. May 15, 2017) (collecting cases).

Yet, "[d]etermining whether an employee is one who 'customarily and regularly receives tips' is a fact-intensive inquiry that requires a case-by-case analysis of the employee's duties and activities." *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 194 (5th Cir. 2015); *see also Alvarado v. Five Towns Car Wash, Inc.*, No. 13-1672, 2014 WL 4678258, at *2 (E.D.N.Y. Sept. 19, 2014) ("In determining whether an employee customarily and regularly receives tips, the Court 'focuses on whether the employee in question is part of an occupation that customarily and regularly receives tips, and whether they have more than *de minimis* interaction with customers as a part of their employment.'") (citation omitted); *Chhab v. Darden Restaurants, Inc.*, No. 11-8345, 2013 WL 5308004, at *6 (S.D.N.Y. Sept. 20, 2013) ("When deciding whether an employee customarily and regularly receives tips, courts must determine whether the employee's job is historically a tipped occupation and whether he has more than '*de minimis*' interaction with customers as a part of his employment."). While some courts have found certain hosts and bussers are tipped employees, the inquiry, as noted, requires a "case-by-case analysis of the employee's duties." *Compare Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 653 (N.D. Ill. 2007) (holding that "senior servers" had "sufficient customer interaction to establish that they were engaged in an occupation in which they 'customarily and regularly received tips'" since they "helped serve food and drinks to tables, greeted customers, and checked on tables during the dinner service.") *with Mould v. NJG Food Serv., Inc.*, 37 F. Supp. 3d 762, 770 (D. Md. 2014) (finding that "cooks, crab steamers, and prep cooks" were not "employees who customarily and regularly receive tips" since "at best, *some* of the kitchen staff *occasionally* had *limited* contact with customers," but "that those cooks, crab steamers and prep cooks who were not on 'counter help' duty 'abstained from any direct intercourse with diners, worked entirely outside the view of patrons, and solely performed duties traditionally classified as food preparation or kitchen support work, and therefore could not

8

be validly characterized as tipped employees under Section 203(m)'") (citation omitted) (emphasis in original).

Here, beginning with the greeters, James Yanucil, the owner of Friendly's, testified that the greeters "greet the guests as they come in, they seat the guests in rotating sections, they bring the menus and the silverware, and they wait for the guests to seat. Then they set the menus up, handing them and the silverware [to the guests]." (Yanucil Dep., ECF No. 37-4 Exh. B at 32:21–25). When they are not greeting customers, Yanucil testified they would ensure that their immediate area is clean and wait for customers at the podium. (Yanucil Dep., ECF No. 37-4 Exh. B at 33:1–16). Finally, in response to whether greeters customarily and regularly receive tips, Yanucil said "no, never." (Yanucil Dep., ECF No. 37-4 Exh. B at 33:17–19). Friendly's office administrator, who handled the payroll, also confirmed that greeters never received tips prior to the implementation of the tip pool policy. (Salisbury Dep., ECF No. 37-4 Exh. C at 29:6–10).

Turning to the expos, also known as bussers, Yanucil testified that they would "set up the records that go out, specific tables, reading the checks as they are up there, knowing what's coming and going. At times they run the food for the server or ice cream. They'll run for the server if they're behind or if it's just sitting there in the window. They probably take to go orders for them." (Yanucil Dep., ECF No. 37-4 Exh. C at 35:21–36:1). Yanucil and Salisbury also testified that expos did not customarily and regularly receive tips. (Yanucil Dep., ECF No. 37-4 Exh. B at 38:10–15; Salisbury Dep., ECF No. 37-4 Exh. C at 30:2–4).

Finally, the fountain workers would "make all the orders from [the] fountain, take the to-go orders, make to-go orders, they refill and replenish the toppings, they rotate them, keep the area clean." (Yanucil Dep., ECF No. 37-4 Exh. B at 39:15–18). Yanucil also testified that the only fountain worker that would interact with customers would be the one working the to-go window.

(Yanucil Dep., ECF No. 37-4 Exh. B at 40:24–41:3). Yanucil and Salisbury, again, both confirmed that fountain workers did not customarily and regularly receive tips. (Yanucil Dep., ECF No. 37-4 Exh. B at 41:18–21; Salisbury Dep., ECF No. 37-4 Exh. C at 31:20–25).

In light of the record in this case, it is apparent that none of these employees meet the definition of "tipped employees" because none were "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips" absent their inclusion in the tip pool. 29 U.S.C. § 203(t). Additionally, the record is clear here that these employees historically *never* received tips at Friendly's. Indeed, it is even undisputed that when Plaintiff was a fountain worker, he did not customarily and regularly receive tips. (Pla.'s SOMF, ECF No. 37-1, ¶17). And critically, Defendants do not dispute that the only position to customarily and regularly receive tips at Friendly's was the server position. (Pla.'s SOMF, ECF No. 37-1, ¶18).

Finally, the record does not suggest that the level of customer interaction these employees had in their positions at Friendly's warranted their inclusion in the tip pool policy. In fact, Defendants did not even attempt to show that they had such interaction which might have justified them being included in the tip pool. Rather, Defendants, merely argued that bussers are eligible to be included under the Department of Labor Field Handbook and that greeters and fountain workers helped streamline the servers' job. While bussers in certain restaurants may certainly be eligible to be included, and have been included, in valid tip pool policies, here, Yanucil's testimony shows the bussers, along with the greeters and fountain workers, had minimal contact with customers, if at all. To be sure, "[a]llowing employers to shirk their obligation under the FLSA to pay a minimum wage to their employees just by conferring a job title that denotes a tipped occupation would circumvent the purpose of the FLSA." *Fiumano*, 2023 WL 1805135 at *5; *see also Montano*, 800 F.3d at 191 ("[O]ne's status as an employee who 'customarily and regularly receives

tips' is 'determined on the basis of his or her activities,' not on the employee's job title.") (internal citations omitted). That these employees are not properly considered tipped employees is underscored by Yanucil's and Salisbury's consistent testimony that these positions historically never received tips. Defendants have not shown otherwise; instead, they have admitted all of Plaintiff's facts, including that the servers were the only employees to customarily and regularly receive tips. Thus, based on the undisputed facts in this record, the greeters, expos, and fountain worker employees were not customarily and regularly tipped employees as a matter of law. As such, they should not have been included in Defendants' tip pool policy and their inclusion violated the FLSA.  For these reasons, summary judgment is granted.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **GRANTED on liability only**. (ECF No. 37). An appropriate Order accompanies this Opinion.

*[signature]*

**CHRISTINE P. O'HEARN**
**United States District Judge**